Peter P. Meringolo (CA Bar No. 197136)
peter@pmrklaw.com
Rebecca L. Kassekert (CA Bar No. 226043)
rebecca@pmrklaw.com
Aaron Myers (CA Bar No. 200145)
aaron@pmrklaw.com
PMRK LAW, LLP
900 Larkspur Landing Circle
Suite 226
Larkspur, CA 94939
Phone: 415-496-3045
Fax: 415-496-3091

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER MCMINN and BETTY MCMINN,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 19-cv-07411-JSC<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER pursuant to the *Standing Order for All Judges of the Northern District of California* and Civil Local Rule 16-9.

**1.     Jurisdiction and Service**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of costs and interest.  No issues exist regarding personal jurisdiction or venue and no parties remain to be served.

## 2. Facts

### a. Plaintiffs' Factual Statement

This case arises out of the horrific Tubbs fire, which destroyed the home and belongings of Plaintiffs Christopher McMinn and Betty McMinn (the "McMinns"). The McMinns purchased the home in 1994. In or about 1996, the McMinns purchased a homeowner's insurance policy from Defendant Allstate Insurance Company ("Allstate") through its Agent, Deborah Fitzgerald ("Allstate Agent Fitzgerald"). The McMinns discussed their insurance needs with Allstate Agent Fitzgerald and demanded a particular level of coverage—enough to rebuild their home and replace all their personal possessions. The McMinns relied on the expertise of Allstate and Allstate Agent Fitzgerald to set the necessary coverage limits, including based upon Allstate's unique knowledge and understanding of demand surge costs in the event of a catastrophe such as a wildfire.

From 1997 through 2016, the policy was renewed every year, and Allstate and Allstate Agent Fitzgerald built a long and trusting relationship with the McMinns. Allstate made a concerted effort during that time to convey its trustworthiness to the McMinns and the general public through a multimillion-dollar national marketing campaign centered around Allstate's slogan "You're in Good Hands" and Allstate's professed "dedication to helping rebuild after catastrophes." Allstate also instructed its agents "to develop trusting, personal, long-term relationships" with customers and to become "trusted advisors on Allstate products and services to customers"—which is what Allstate Agent Fitzgerald did with the McMinns. Year in and year out, Allstate Agent Fitzgerald implicitly or explicitly assured the McMinns that the policy limits were for full replacement value and that the coverage was adequate, and the McMinns reasonably relied on those assurances.

In early 2017, the policy was renewed again. The McMinns again relied on the expertise of Allstate and Allstate Agent Fitzgerald in setting the coverage

limits. Because of their long-term relationship with Allstate and Allstate Agent Fitzgerald, backed by Allstate's multimillion-dollar national marketing campaign, the McMinns had a reasonable expectation that the limits were for the full replacement cost of their home. Moreover, Allstate specifically represented that Allstate calculated the limits and determined that they were adequate. The policy states that the limit for dwelling protection was "based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home." Further, after Allstate inspected the home in September or October of 2017, Allstate and Allstate Agent Fitzgerald sent a letter to the McMinns confirming the inspection and stating: "Congratulations, we did not find any issues that impact your current coverage, and you do not need to do anything further . . . ."

On October 9, 2017, the Tubbs wildfire destroyed the McMinns' home and all their possessions. The McMinns made a claim to Allstate and soon realized that the coverage limits were fraudulently, negligently, or mistakenly set by Allstate and woefully inadequate for the McMinns to rebuild their home and replace their possessions. Per a building contract obtained by the McMinns at Allstate's direction, the cost to rebuild their home is $5,791,771, while the combined limits under the policy is $1,343,914.50, leaving the McMinns underinsured on coverage to rebuild their home by $4,447,856.50. Per a report prepared by Allstate, the cost to replace the McMinns' possessions is $1,884,716.05, while the limits under the policy is $584,922, leaving the McMinns underinsured on coverage to replace their possessions by $1,299,794.05. Allstate paid the policy limits for each of these coverages but has refused the McMinns' request to reform the policy to remedy the underinsurance. As a result, the McMinns have been damaged by such underinsurance in the cumulative amount of no less than $5,747,650.55.

The McMinns' policy also provides coverage for 24 months of "Additional

-3-

Living Expenses" (ALE) for the reasonable increase in living expenses incurred due to their home being uninhabitable following the declaration of a state of emergency. The State of California declared a state of emergency on October 9, 2017. Allstate paid 24 months of ALE to the McMinns. The McMinns requested an additional 12-month extension of ALE pursuant to California Insurance Code § 2051.5(b)(2), which provides that "[a]n insurer shall grant an extension of up to 12 additional months, for a total of 36 months, if an insured acting in good faith and with reasonable diligence encounters a delay or delays in the reconstruction process that are the result of circumstances beyond the control of the insured." Allstate refused the McMinns' request even though it was Allstate's egregious conduct and undue delay in the handling of the claim, including cycling through nine different adjusters, which caused the need for ALE coverage to continue. As a result, the McMinns have been damaged in an amount $342,000 ($28,500 in ALE per month for 12 months), plus the amount of additional six-month extensions for good cause pursuant to section 2051.5.

      b.     <u>Defendants' Factual Statement</u>

Allstate has paid the McMinns all benefits available under their insurance policy, for a total of over $2,500,000. This includes $779,896.00 for damage to the dwelling, $116,047 for other structures, over $400,000 in extended limits for the dwelling and other structures, $584,922 for personal property, and $684,000 for 24 months of additional living expenses ("ALE"). The ALE amount was for $28,500 per month in rent on a house that the McMinn's bought and rented to themselves.

Allstate denies the McMinn's allegations regarding underinsurance. The limits of the Allstate policy were based on information provided by the McMinns. They never sought to change their coverage. The evidence will establish that the house was not underinsured and, if it was, it was not the fault of Allstate.

**3.    Legal Issues**

    a.    Defendant's Liability for Underinsurance

The McMinns contend in their claims for breach of contract, negligence, and fraud that Allstate is liable for the underinsurance for the replacement cost of the McMinns' home and belongings because (i) the McMinns requested coverage sufficient to rebuild their home and replace their belongings; (ii) Allstate and Allstate Agent Fitzgerald solicited and developed a relationship of trust with the McMinns through Allstate's marketing campaigns and Allstate Agent Fitzgerald's personal outreach to the McMinns pursuant to Allstate corporate policy; (iii) Allstate Agent Fitzgerald held herself out to the McMinns as an expert in determining adequate coverage limits and invited and induced the McMinns to rely on her expertise; (iv) Allstate and Allstate Agent Fitzgerald made explicit or implicit representations to the McMinns that the coverage provided by their policy was adequate; and, (v) the McMinns reasonably relied on the representations by Allstate and Allstate Agent Fitzgerald.  *See, e.g., Free v. Republic Ins. Co.*, 8 Cal. App. 4th 1726, 1728-30 (App. 2d Dist. 1992) (reversing order dismissing negligent misrepresentation claim, holding plaintiff adequately pled that defendants had a duty to advise him of the sufficiency of his insurance to cover the cost of replacing his home where he asked about the sufficiency of the policy and defendants assured him that the coverage was sufficient).

Allstate contends that it is not liable for the alleged underinsurance of the McMinns' home and belongings because: (i) it did not owe the McMinns a duty to calculate the actual replacement cost of their residence; (ii) the policy limits were based on information that the McMinns provided to Allstate; and (iii) McMinns chose and accepted the coverage limits of their Policy.

    b.    Defendant's Liability for Additional ALE

California Insurance Code section 2051.5(b)(2), as amended effective September 21, 2018, provides:

-5-

> In the event of a covered loss relating to a state of emergency . . . coverage for additional living expenses shall be for a period of no less than 24 months from the inception of the loss, but shall be subject to other policy provisions. An insurer shall grant an extension of up to 12 additional months, for a total of 36 months, if an insured acting in good faith and with reasonable diligence encounters a delay or delays in the reconstruction process that are the result of circumstances beyond the control of the insured. Circumstances beyond the control of the insured include, but are not limited to, unavoidable construction permit delays, lack of necessary construction materials, and lack of available contractors to perform the necessary work. Additional extensions of six months shall be provided to policyholders for good cause.

The McMinns contend that section 2051.5(b)(2) applies to all policies used after July 1, 2005. Specifically, section 2051.5(e) provides:

> (1) On and after July 1, 2005, and only until July 1, 2019, all policy forms used by an insurer shall be in compliance with this section, except for the changes made to this section by the act that added paragraph (2).
>
> (2) On and after July 1, 2019, all policy forms issued or renewed by an insurer shall comply with this section in its entirety, including the changes made to this section by the act that added this paragraph.

Accordingly, the McMinns contend that section 2051.5(b)(2) applies to their policy and requires Allstate to pay the McMinns a 12-month extension of ALE in the amount of $342,000 ($28,500 for 12 months), and additional 6-month extensions for good cause.

Allstate contends that the 2018 amendments to California Insurance Code § 2051.5 do not apply retroactively to this dispute about a 2017 loss. The statute does not contain express language of retroactivity. The California legislature considered making the amendments retroactive. It decided not to include language that would make the amendments retroactive.

-6-

### c. Defendant's Liability for Punitive Damages

The McMinns contend in their claims for fraud, bad faith, and elder financial abuse that Allstate and Allstate Agent Fitzgerald engaged in egregious and despicable conduct that constitutes malice, oppression, or fraud, entitling them to punitive damages under California Civil Code section 3294.

Allstate contends that it worked assiduously to adjust the McMinns' claim. It paid all amounts due under the policy. Its conduct does not come close to malice oppression or fraud.

### d. Defendant's Liability for Treble Damages

The McMinns contend that they are entitled to treble damages for Allstate's elder financial abuse under California Civil Code section 3345 because (i) the McMinns are senior citizens; (ii) Allstate knew that its conduct and Allstate Agent Fitzgerald's conduct was directed toward senior citizens, (iii) Allstate caused the McMinns a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen; (iv) the McMinns were substantially more vulnerable than other members of the public to Allstate's conduct because of their age; and, (v) the McMinns actually suffered substantial emotional or economic damage resulting from the Allstate's conduct.

Allstate contends that California Civil Code § 3345 is not a separate claim for relief. In addition, section 3345 only allows for trebling of a fine or penalty, not compensatory damages. *Clark v. Superior Court*, 50 Cal. 4th 605, 614 (2010).

**4. Motions**

There are no prior or pending motions at this time.

One potentially pure question of law is whether that California Civil Code section 2051.5 applies and requires Allstate to pay the McMinns a 12-month extension of ALE and additional 6-month extensions of ALE for good cause. As noted above, the statute on its face applies to all policy forms used by an insurer

on and after July 1, 2005.  The McMinns may bring a motion for partial summary judgment to establish that the statute applies to their policy.

Allstate agrees that the retroactivity of the 2018 amendments to Insurance Code § 2051.5 is a pure legal question.

## 5. Amendment of Pleadings

The parties do not currently expect to add or remove any parties, claims, or defenses.  The parties propose that the deadline for amending pleadings be February 10, 2020.

## 6. Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## 7. Disclosures

The parties have timely complied with the initial disclosure requirements of Fed. R. Civ. P. 26 by serving their respective initial disclosures by email on January 30, 2020.

### a. Plaintiffs' disclosures

The McMinns identified 13 witnesses likely to have discoverable information—along with the subjects of that information—that the McMinns may use to support their claims.  The McMinns also identified 12 subjects on which they expect to obtain testimony from Allstate's Rule 30(b)(6) corporate designee(s) that the McMinns may use to support their claims.

In addition, the McMinns identified 17 categories of documents, including electronically stored information, that the McMinns have in their possession, and/or which the McMinns believe to be in Allstate's possession, that the McMinns may use to support their claims.  The McMinns will produce the documents in their possession on a rolling basis.

The McMinns also provided a computation of each category of damages claimed by them and will produce the documents on which each computation is based.

      b.    <u>Defendant's disclosures</u>

Allstate identified 14 individuals under Federal Rule of Civil Procedure 26(a)(1)(A)(i). Allstate identified 5 categories of documents under Federal Rule of Civil Procedure 26(a)(1)(ii). Allstate will produce the documents in their possession on a rolling basis.

**8.    <u>Discovery</u>**

The parties have not yet conducted any discovery. The parties do not currently anticipate any discovery disputes. The parties have not proposed any limitations or modifications of the discovery rules at this time.

The parties propose the following discovery plan pursuant to Rule 26:

      a.    <u>Timing, form, and requirements for disclosures under Rule 26(a)</u>

The parties made their respective initial disclosures pursuant to Rule 26(a) on January 30, 2019.

      b.    <u>The subjects on which discovery may be needed</u>

The McMinns anticipate conducting discovery relating to the following principal topics: (a) communications between the McMinns and Allstate or any Allstate agent; (b) Allstate's processing of the McMinns' insurance claims, including Allstate's assignment of nine different adjusters; (c) Allstate's assessments of the costs to replace the McMinns' home and possessions; (d) Allstate's corporate policies and procedures regarding the training and supervision of its adjusters; (e) Allstate's or its agents' representations to the McMinns or the general public regarding their trustworthiness; (f) Allstate's or its agents' representations to the McMinns or the general public regarding their expertise in determining adequate policy coverage, including in the event of a catastrophe; (g) the purposes and effectiveness of Allstate's marketing campaigns, including

"You're in Good Hands" and any marketing campaigns relating to homeowner's insurance; (h) Allstate's corporate policies and procedures regarding the training and supervision of its sales agents; (i) Allstate's corporate policies and procedures regarding the determination of policy limits; (j) Allstate's understanding of demand surge costs in the event of a catastrophe such as a wildfire; (k) the data available to and/or used by Allstate to set policy limits, including data available from third parties; (l) Allstate's corporate policies and procedures to ensure its and its agents' compliance with California's Replacement Cost Regulation (codified at California Code of Regulations, title 10, section 2695.183(a)-(i)); (m) steps taken by Allstate or its agents to comply with California's Replacement Cost Regulation (codified at California Code of Regulations, title 10, section 2695.183(a)-(i)), with respect to the McMinns; (n) Allstate's document retention or destruction policies; and (o) steps taken by Allstate to preserve potentially discoverable information, particularly information created prior to October 9, 2017.

Allstate anticipates conducting discovery relating to the following principal topics: (a) communications between the McMinns, Allstate, and their agent; (b) the state of the McMinns' house and personal belongings before the fire and in the preceding years; (b) the McMinns' current living expenses; (c) costs for the re-construction of the house; (e) the McMinns' reconstruction contract and other construction bids for the property; (f) Plaintiffs' general knowledge and experience regarding the house and construction.

    c.    <u>When discovery should be completed</u>

The parties agree that fact discovery should be completed within 180 days of the Initial Case Management Conference, and that expert discovery should be completed within 45 days thereafter.

    d.    <u>Whether discovery should be conducted in phases or be limited to or focused on particular issues</u>

The parties do not believe that discovery should be conducted in phases or

-10-

SMRH:4832-5625-2082.3

be limited to or focused on particular issues.

      e.    <u>Any issues about disclosure, discovery, or preservation of ESI, including the form or forms in which it should be produced</u>

The McMinns identified to Allstate the following Allstate custodians likely to have discoverable ESI in their possession, custody, or control: (i) Allstate Agent Fitzgerald; (ii) her supervisor(s); (iii) Allstate employees involved in underwriting the McMinns' policy or processing the McMinns' claims; (iv) Allstate employees involved in developing, approving, or implementing Allstate's policies and procedures regarding the determination of policy limits; (v) Allstate employees involved in developing, approving, or implementing the company's policies and procedures regarding the training of Allstate insurance sales agents; and, (vi) Allstate employees involved in developing, approving, or evaluating the company's marketing campaigns regarding Allstate's or its agents' trustworthiness or expertise in ensuring adequate coverage. The McMinns also asked Allstate to confirm the existence of any corporate document retention or destruction policy and the steps taken by Allstate to preserve potentially discoverable information, particular information created prior to October 9, 2017.

Allstate agreed to investigate the Allstate custodians likely to possess discoverable information, Allstate's corporate document retention or destruction policy, and the nature and form of potentially discoverable ESI in Allstate's possession, custody, or control, and to further meet and confer with the McMinns regarding the discovery, preservation, and production of ESI, including the form of production, once Allstate has completed that investigation and the McMinn's have reviewed the claim file produced by Allstate with its initial disclosures. The parties also discussed entering into a stipulated e-discovery order and agreed that a formal agreement is not necessary at this time.

  f. <u>Any issues about claims of privilege or of protection of trial preparation materials</u>

The parties are not aware of any issues about claims of privilege or of protection of trial preparation materials at this time. The parties discussed including a "claw-back" provision in a stipulated protective order and agreed that a formal agreement is not necessary at this time.

  g. <u>What changes should be made in the limitations on discovery imposed by the Federal Rules or by Local Rule, and what other limitations should be imposed</u>

The parties do not seek any modification of the general limitations provided for in the Federal Rules or the imposition of any additional limitations.

  h. <u>Any other orders that the Court should issue under Rule 26(c) or Rule 16(b) and (c)</u>

The parties do not seek any orders under Rule 26(c) or under Rule 16(b) and (c) at this time.

**9. Class Actions**

Not applicable.

**10. Related Cases**

There are no related cases or proceedings.

**11. Relief**

The McMinns seek as damages (a) $4,447,856.50 for the amount of underinsurance for the replacement cost of their home; (b) $1,299,794.05 for the amount of underinsurance for the replacement cost of their personal possessions; (c) $342,000 for a 12-month extension of ALE; (d) the amount of additional six-month extensions of ALE as needed for good cause; and, (e) additional damages, including punitive damages, arising from Allstate's negligent, fraudulent, and/or bad faith conduct, and/or elder financial abuse, in amounts to be proved at trial. The McMinns also request reformation of the policy to increase the dwelling coverage to $5,791,771 and the personal property coverage to $1,884,716.05, and

-12-

a declaration that California law requires Allstate to grant the McMinns a 12-month extension of ALE (for a total of 36 months) and additional six-month extensions of ALE as needed for good cause.  Allstate disputes that the McMinns are entitled to any such relief.

**12.    Settlement and ADR**

The parties agree that this case has a good prospect of settlement.  The parties have not engaged in any ADR to date.  The parties have met and conferred as required by ADR Local Rule 3-5 and have agreed to attend private mediation after the parties respond to written discovery.

The McMinns have had their life on hold since the 2017 Tubbs fire while these insurance issues remain unresolved.  Given the amount that they are underinsured, the McMinns cannot begin to rebuild their home – and their lives – unless and until this matter is resolved.  The McMinns urge the Court to order an early mediation and believe that Allstate has all the information it needs to engage in a meaningful mediation.  To the extent that Allstate believes that it needs additional information before engaging in such an early mediation, the McMinns will work to prioritize the production of such information.

Allstate is willing to attend mediation after some discovery has occurred.

**13.    Consent for Magistrate Judge For All Purposes**

All parties have consented to have Magistrate Judge Jacqueline Scott Corley conduct all further proceedings including trial and entry of judgment.

**14.    Other References**

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    Narrowing of Issues**

The parties have not identified any issues that can be narrowed by agreement.  The parties agree that the issue of whether California Insurance Code section 2051.5 requires Defendant to grant to Plaintiffs a 12-month extension of

ALE and additional six-month extensions of ALE for good cause may be narrowed by a motion for partial summary judgment.  The parties do not request to bifurcate any issues, claims, or defenses at this time.

16. **Expedited Trial Procedure**

The parties do not believe that an expedited trial procedure is appropriate.

17. **Scheduling**

The parties propose the following deadlines:

(a) Amendment of pleadings to be completed by February 10, 2020

(b) Fact discovery to completed by July 31, 2020

(c) Disclosure of expert witnesses to be completed by August 14, 2020

(d) Disclosure of rebuttal expert witnesses to be completed by September 14, 2020

(e) Depositions of expert witnesses to be completed by October 7, 2020

(f) Dispositive motions to be heard by October 15, 2020

(g) Pretrial conference:  October 29, 2020, 1:30 p.m.

(h) Trial:  November 16, 2020, 8:30 a.m.

18. **Trial**

The case will be tried to a jury.  The expected length of trial is 3-5 days.

19. **Disclosure of Non-party Interested Entities or Persons**

The McMinns filed a Certification of Interested Entities or Persons on January 27, 2020, stating pursuant to Civil L.R. 3-15 that other than the named parties, there is no such interest to report.

Allstate filed a Notice of Parties with Financial Interest on November 8, 2019, stating pursuant to Fed. R. Civ. P. 7.1 that Allstate Corporation has a direct pecuniary interest in the outcome of this case.

20. **Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct of the Northern District of California.

-14-

SMRH:4832-5625-2082.3

**21.    Other**

Not applicable.

Dated: January 30, 2020         PMRK LAW, LLP

By: */s/ Peter P. Meringolo*
    Peter P. Meringolo
    Attorneys for Plaintiffs

Dated: January 30, 2020         SHEPPARD MULLIN, RICHTER & HAMPTON LLP

By: */s/ Marc J. Feldman*
    Marc J. Feldman
    Attorneys for Defendant

SMRH:4832-5625-2082.3

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

**IT IS SO ORDERED.**

Dated: _____

UNITED STATES MAGISTRATE JUDGE

-1-

SMRH:4832-5625-2082.3